## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

PIERRE ERNEST FALGOUT, III,     }
     }
    Petitioner,     }
     }
v.     }    Case No.:  **6:10-cv-8037-RDP-RRA**
     }                 **6:07-cr-157-RDP-RRA**
     }
UNITED STATES OF AMERICA,     }
     }
    Respondent.     }

## MEMORANDUM OPINION

Before the court is an amended Motion to Vacate, Set Aside, or Correct Sentence filed on August 18, 2010 pursuant to 28 U.S.C. § 2255 by Petitioner Pierre Ernest Falgout III, ("Petitioner" or "Falgout") a federal prisoner.  (Civ. Doc. #4).[1]  Petitioner challenges his conviction on the grounds that his guilty plea was not made voluntarily, his conviction was based on unconstitutionally obtained evidence, and that he received ineffective assistance of counsel.  (Civ. Doc. #4 at 4).  This motion has been fully briefed.  (*See* Civ. Docs. #4, 6, 8, 18, and 19).  Based on the briefs and the evidence in the record, the court finds that the motion is due to be denied.

## I.  BACKGROUND

On May 2, 2007, a forty-three count Indictment charged that Petitioner did "knowingly employ, use, persuade, induce, entice, and coerce a minor to engage in sexually explicit conduct for the purpose of producing [a] visual depiction of such conduct" in violation of 18 U.S.C. § 2251(a). (Crim. Doc. #1 at 1).  A superseding indictment was filed on July 31, 2007 adding an additional

---

[1] There are two dockets referenced in this memorandum: (1) the underlying criminal trial in which Petitioner was convicted (*United States v. Falgout*, Case No. 6:07-cr-157); and (2) the instant civil action brought under 28 U.S.C. § 2255 (*Falgout v. United States*, Case No. 6:10-cv-8037). To avoid confusion, documents from the former criminal docket are marked with "Crim. Doc." and documents from the § 2255 civil docket are marked with "Civ. Doc."

county of the same charge.  (Crim. Doc. #15).  Petitioner pled guilty to Counts 1 through 30, Court 43, and Count 44.  (Crim. Docs. #22 & 39).  He was sentenced to 960 years in prison.  (Crim. Doc. #40).

The central undisputed fact in this case is this: over the course of more than one year, Petitioner physically, emotionally, and sexually abused four minor boys and recorded such abuse in both pictures and video format.  (Crim. Doc. #15 at 1-4).  Although the court provides only a summary of the evidence below, the record in the criminal case reflects that Petitioner engaged in truly horrific, despicable crimes against children.

To describe the pictures and videos as shocking would be an understatement.  The evidence presented to the court showed Petitioner engaging in extreme, malicious, and sadistic conduct towards four very young, vulnerable children.  In one video clip, a child appeared naked while under the influence of drugs.  (Crim. Doc. #40 at 74).  Petitioner himself suggested that he drugged the children on multiple occasions.  (Civ. Doc. #10 at 5).  In another clip, a child is forced to wear two feces-filled diapers that were strapped to his head with tape.  (Crim. Doc. #40 at 75).  The child cried and screamed throughout the clips as he was repeatedly tortured.  (*Id.*).  There are many more examples of profoundly inhumane abuse documented in the pictures and video clips.  The court need not delve into them here, but it mentions these details now to emphasize the gravity of this case.

Petitioner pled guilty to 32 Counts of the Indictment.  (Crim. Docs. #22 & 39).  At the plea hearing, the court performed a plea colloquy to ensure that Petitioner was pleading voluntarily and knowingly.  (Crim. Doc. #39).  The court informed Petitioner of his right to plead not guilty and the rights that would be waived if he pled guilty.  (*Id.* at 11).  The court described to Petitioner the charges against him and what elements the Government would have to prove beyond a reasonable

2

doubt if the case were to proceed to trial. (*Id.* at 14-15). The court asked the Government to describe the evidence it intended to use at trial, all of which Petitioner admitted to be true and accurate. (*Id.* at 25-27). The court described to Petitioner the maximum possible sentence that he could face by pleading guilty. (*Id.* at 19-24). The court also reminded Petitioner that there was no plea bargain offered by the Government and that, should the final sentence differ from the sentence he or his attorney anticipated, such a disparity would not be grounds to challenge his conviction or sentence. (*Id.*). The court inquired into the voluntary nature of Petitioner's plea and Petitioner confirmed that he was not coerced into pleading guilty and that he was pleading guilty because he was in fact guilty of the crimes charged in the Indictment. (*Id.* at 24). Petitioner also informed the court that he was fully satisfied with his lawyer's advice and representation. (*Id.* at 11).

After Petitioner was sentenced to 960 years of imprisonment, Petitioner appealed his case to the Eleventh Circuit. (Crim. Doc. #29). On May 21, 2009, the Eleventh Circuit affirmed Petitioner's conviction and sentence. (Crim. Doc. #46). There is no record of a writ of certiorari to the Supreme Court, so Petitioner's judgement became final on August 19, 2009.[2] Because the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2244(d)(1), requires a federal prisoner to file his habeas petition within one year from the date his conviction became final, the deadline for Petitioner to file this instant § 2255 Motion fell on August 19, 2010, which Petitioner met. (Civ. Doc. #1). The court is unaware of any previous § 2255 motions, so this instant Motion

---

[2] The deadline for seeking review by the United States Supreme Court is 90 days after the final judgment of the relevant lower court. Sup. Ct. R. 13(1). When a federal prisoner does not seek certiorari, his conviction became final for purposes of 28 U.S.C. § 2255 on the day the time period for seeking certiorari expired. *Clay v. United States*, 537, U.S. 522, 532 (2003).

does not appear to be successive.  Therefore, the court has jurisdiction to hear Petitioner's claim. 28 U.S.C. § 2244(b)(3)(A).

## II.  PETITIONER'S ARGUMENTS

In his pleadings, Petitioner raises two substantive arguments challenging the legality of his conviction and five arguments alleging ineffective assistance by his counsel.  (Civ. Docs. #4 at 4; #8 at 7, # 19 at 5-6).  Petitioner's substantive arguments are that (1) he did not voluntarily plead guilty and (2) that evidence used to convict him was unconstitutionally obtained in violation of the Fourth Amendment.  (Civ. Doc. #4 at 4).  In addition, Petitioner argues that his attorney provided him ineffective assistance because: (1) he failed to fully apprise Petitioner of the maximum possible sentence available in his case; (2) he failed to inform Petitioner that pleading guilty waived his right to challenge duplicate counts in the Indictment; (3) he failed to object to the factual statements in the pre-sentence report ("PSR") and delivered a losing legal argument during sentencing; (4) he failed to make discovered evidence available to Petitioner; and (5) he failed to negotiate a more favorable plea bargain with the Government.  (Civ. Doc. #4 at 7; Civ. Doc. #8 at 7).

## III.      LEGAL STANDARDS

A motion to set aside, vacate or correct a sentence of a person in federal custody pursuant to 28 U.S.C. § 2255 entitles a prisoner to relief "[i]f the court finds that ... there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."  28 U.S.C. § 2255(b).  The movant must specify all grounds for relief and specifically plead all facts supporting each claim for relief.  RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS 2(b).

A.    **Procedural Default**

A § 2255 motion, however, is not available for any garden variety claim.  Only constitutional claims, jurisdictional claims, and claims of error so fundamental as to have resulted in a complete miscarriage of justice are cognizable on collateral attack.  *See United States v. Addonizio*, 442 U.S. 178, 184–86 (1979); *Hill v. United States*, 368 U.S. 424, 428 (1962); *Richards v. United States*, 837 F.2d 965, 966 (11th Cir.1988); *Kett v. United States*, 722 F.2d 687, 690 (11th Cir. 1984). Furthermore, a § 2255 motion may not serve as a substitute for a direct appeal.  *United States v. Frady*, 456 U.S. 152, 165 (1982); *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004). Therefore, claims that could have been raised in the district court or on direct appeal, but were not raised, are considered procedurally defaulted and generally barred from review in a § 2255 proceeding.  *McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001).  To overcome this procedural default,  a petitioner "must show both (1) 'cause' excusing his . . . procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains."  *Frady*, 456 U.S. at 168; *Black v. United States*, 373 F.3d 1140, 1142 (11th Cir. 2004).  This standard is "a significantly higher hurdle than would exist on direct appeal." *Frady*, 456 U.S. at 166.  To demonstrate prejudice, a petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 170 (emphasis in original).  This rule applies to all claims, including constitutional claims.  *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977); *Lynn v. U.S.*, 365 F.3d at 1234; *Thornton v. United States*, 368 F. 2d 822, 825-26 (D.C. Cir. 1966).

**B.      Ineffective Assistance of Counsel**

A showing by a petitioner that his attorney's performance was constitutionally ineffective may be raised for the first time in a habeas petition to demonstrate "cause" to excuse a procedural default. *Murray v. Carrier*, 477 US 478, 489 (1986).  In order to establish a claim of ineffective assistance of counsel, a petitioner is required to show that: (1) his attorney's representation fell below "an objective standard of reasonableness"; and (2) a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  "The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a Strickland claim, and both prongs must be proved to prevail."  *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) (cert. denied).

To succeed in proving the "performance" prong, "the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  When faced with ineffective-assistance claims, "reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999) (internal citations omitted). The Eleventh Circuit reviews a lawyer's conduct under the "performance" prong with considerable deference, giving lawyers the benefit of the doubt for "heat of the battle" tactical decisions. *Johnson v. Alabama*, 256 F.3d at 1176; *see also Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir.1995) ("The test for ineffectiveness is not whether counsel could have done more; perfection is not required. Nor is the test whether the best criminal defense attorneys might have done more. Instead the test is . .

6

. whether what they did was within the 'wide range of reasonable professional assistance.'") (internal citations omitted).

To establish prejudice, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. As the Eleventh Circuit has explained:

> habeas petitioners must affirmatively prove prejudice because "[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial." "[T]hat the error had some conceivable effect on the outcome of the proceeding" is insufficient to show prejudice.

*Gilreath v. Head*, 234 F.3d 547, 551 (11th Cir. 2000) (quoting *Strickland*).

When applying the *Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (internal citations omitted) (cert. denied); *see also Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

## IV.  DISCUSSION

Petitioner has raised two substantive claims along with five arguments asserting that he was prejudiced by ineffective assistance of counsel. The court will first address Petitioner's substantive claims before turning to his ineffective assistance of counsel arguments.

## A.    Petitioner's Substantive Claims

Petitioner raises two substantive arguments challenging his conviction and sentence. Specifically, Petitioner alleges that his guilty plea was not given voluntarily and that evidence used

7

to convict him was unconstitutionally obtained.  (Civ. Doc. #4 at 4).  Both of these claims are procedurally defaulted; Plaintiff could have raise these arguments on appeal.  Because Plaintiff did not raise these arguments earlier, he may not raise these arguments now without showing both cause and actual prejudice.  *Frady*, 456 U.S. at 168.  To show cause, Petitioner alleges that he was unable to pursue these arguments on appeal because his attorney provided ineffective assistance.  (Civ. Doc. #8 at 7).  For reasons discussed later, the court has found after reviewing all the evidence (which is undisputed) that Petitioner's lawyer did not provide him with ineffective assistance.  Therefore, Petitioner is unable to show cause and these substantive arguments remain procedurally defaulted.  However, in the interest of thoroughness, the court addresses the merits of both of Petitioner's substantive arguments in turn even though they are procedurally defaulted.

>1.     **Petitioner's Guilty Plea Was Voluntary**

In his Petition, Falgout asserts for the first time that his guilty plea was not made voluntarily or with an understanding of the nature of the charges against him or the consequences of that plea.  (Civ. Doc. # 4 at 4).  Petitioner claims that he was left unaware of the nature and the extent of the Government's evidence against him because his attorney withheld discovered evidence from him.  (*Id.*).  Petitioner further alleges that his plea was not made knowingly because he was unaware of the maximum penalty he faced for his actions.  (*Id.*).  As a result, Petitioner maintains that he was "coerced" by his counsel to plead guilty.  (*Id.*).  Falgout's arguments of coercion are meritless as the transcript from the plea hearing indicates:

>The Court:     Has anyone threatened or coerced you in any way to
>               cause you to plead guilty today?
>
>Petitioner:    No, sir.

| The Court: | Are you pleading guilty because you are in fact guilty of the counts that still remain with respect to your plea? |
|---|---|
| Petitioner: | Yes, sir. |

(Civ. Doc. #39 at 24). Indeed, none of Petitioner's claims are credible in light of the record. A thorough review of the record reveals that: (1) Petitioner understood the charges against him; (2) Petitioner understood the consequences of pleading guilty; (3) Petitioner was aware of the nature and extent of the evidence against him; and (4) Petitioner was aware of the maximum penalty he could face by pleading guilty.

First, Petitioner cannot credibly claim that he was unaware of the nature of the charges against him; the court carefully explained the charges against him in detail:

| The Court: | What I want to do next is cover with you an explanation of the charges and possible penalties that relate to Counts 1 through 30 and Counts 43 through 44. For purposes of the hearing today, we are going to set aside the charges in Counts 31 through 42, which the government has indicated that they intend, if you plead guilty, to move to dismiss those charges at sentencing. Do you understand that? |
|---|---|
| Petitioner: | Yes, sir. |
| The Court: | All right. Counts 1 through 30 and 43 and 44 charge you with the separate offenses of violating 18 United States Code Section 2251(a), which is sexual exploitation of minors. Those are each felony charges. Before you could be found guilty of those charges, the government would have to prove beyond a reasonable doubt each element of each of the charges to which you are pleading guilty. Do you understand that? |
| Petitioner: | Yes, sir. |

| | |
|---|---|
| The Court: | All right. Section 2251(a) makes it a federal crime or offense for anyone to knowingly employ, use, persuade, induce, entice, or coerce any minor to engage in any sexually explicit conduct knowing or having reason to know that such visual depiction will be transported in interstate commerce or that that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means including by a computer. You can be found guilty of those offenses only if all the following facts are proved beyond a reasonable doubt. First, that you knowingly employed, used, persuaded, induced, enticed, or coerced a minor to engage in any sexually explicit conduct as charged. Second, that you did so for the purpose of producing any visual depiction of such conduct as charged. And, third, that you knew or had reason to know that such visual depiction would be transported in interstate commerce, or that the visual depiction was produced using materials that had been mailed, shipped, or transported in interstate or foreign commerce by any means including by a computer, as charged in the superseding indictment. Now, to be sure you understand this, with respect to each one of those counts, the government would have to prove each one of those things to convict you on that count. Do you understand that? |
| Petitioner: | Yes, sir. |

(Civ. Doc. #39 at 14-15). The court then proceeded to define each term of the elements of the offenses for which defendant was charged. (*Id.* at 16-18). After every set of terms, the court asked Petitioner to indicate whether he understood what the court had said. (*Id.*). Each time, the Petitioner indicated that he did. (*Id.*). Petitioner also testified that he had received a copy of the Indictment against him and that he had adequate time to consult with his lawyer regarding the charges in the Indictment. (*Id.* at 10-11). Petitioner informed the court that he was fully satisfied with his lawyer's advice and representation. (*Id.* at 11).

Second, the record belies Petitioner's assertion that he did not understand the consequences of pleading guilty.  The court explained to Petitioner that, by maintaining a plea of "not guilty," he retained his right to be tried by a duly-selected jury.  (Crim. Doc. #39 at 11).  The court pointed out that Petitioner would be presumed innocent unless the Government proved each and every element of the charges against him beyond a reasonable doubt.  (*Id.*).  Furthermore, the court notified Petitioner that he retained the right to not testify.  (*Id.*).  The court then informed Petitioner that by pleading guilty, he would waive all of these rights, which Petitioner answered that he understood. (*Id.*).

Third, the evidence in the record clearly shows that Petitioner was well aware of the nature and extent of the evidence against him.  Petitioner had received a copy of the Indictment.  (Crim Doc. #39 at 10, 14-18).  At the plea hearing, the Government described to Petitioner and the court all the evidence it intended to use against him at trial.  (Crim. Doc. #39 at 25-27).  Petitioner informed his attorney that he had already seen all of the pictures and knew what kind of actions were depicted in the video.  (Civ. Doc. #10 at 4, 7, 18).  It is clear from the evidence that Petitioner was well aware of the nature and extent of the evidence against him.

Finally, the record makes clear that Petitioner was informed of the maximum possible sentence.  The court informed Petitioner during the plea hearing of the maximum possible sentence he could face if he were to plead guilty.  (Crim. Doc. #39 at 19-24; *id*. at 19) (indicating to Petitioner that "each count" (*i.e.*, "each separate offense") carries with it custody of 15-30 years) (emphasis added).  Moreover, during this colloquy, the court explicitly advised Petitioner that if the actual sentence is different from any estimate that he or his attorney expected, such a disparity could not

be the basis for setting aside the guilty plea.  (*Id.* at 23).  Petitioner indicated that he understood this.  (*Id.* at 24).[3]

Therefore, for all the reasons mentioned above, the court concludes that Petitioner's guilty plea was delivered voluntarily.  As such, Petitioner's arguments otherwise are without merit.  A Section 2255 action is not designed to account for buyer's remorse.  But that is all that is at issue here.

## 2.        Petitioner Has Not Shown Fourth Amendment Violations

Petitioner alleges, without any specificity, that the evidence used against him was collected in an unconstitutional search and seizure in violation of the Fourth Amendment.  (Civ. Doc. #4 at 4).  However, this argument does not hold water because, as already noted, Petitioner has procedurally defaulted this argument and, in any event, he voluntarily pled guilty.  To give teeth to the Fourth Amendment's protection against unlawful searches and seizures, courts will suppress unlawfully obtained evidence from being introduced at trial.  *E.g., Wong Sun v. United States*, 371 US 471, 503 (1963); *United States v. Hernandez*, 418 F. 3d 1206, 1209 (11th Cir. 2005).  However, when a criminal defendant pleads guilty, there is no trial.  Therefore, generally speaking, a voluntary, unconditional guilty plea waives all non-jurisdictional defects in the proceedings.  *United States v. Fairchild*, 803 F.2d 1121, 1124 (11th Cir. 1986).  This includes the validity of a search and seizure.  *United States v. Wai-Keung*, 115 F.3d 874, 877 (11th Cir. 1997).  Because Petitioner voluntarily pled

---

[3] Additionally, Petitioner's attorney noted by affidavit that Petitioner was fully aware that the Government intended to seek an effective life sentence.  (Civ. Doc. #18-1 at 2).  To the extent Falgout contests the credibility of his attorney's statement, that does not create a need for an evidentiary hearing in this matter. The court, on the record and in open court, fully advised Petitioner about the maximum penalties in this case.  (*Id*. at 19-24).

guilty, there was no trial in which unlawfully obtained evidence could be introduced or excluded. Bottom line: there is no constitutional defect for the court to consider here.

**B.      Ineffective Assistance of Counsel**

**1.      Failure to Advise Petitioner of Maximum Possible Sentence**

Petitioner alleges that his attorney failed to advise him of the maximum possible sentence in his case. (Civ. Doc. #4 at 4). This allegation is flatly contradicted by the record. Petitioner indicated in his Guilty Plea Advice of Rights Certification that his attorney explained and advised him of the maximum possible sentence he may receive by pleading guilty. (Crim. Doc. #22 at 4). In addition, the court also advised Petitioner of the maximum possible sentence at the plea hearing. (Crim. Doc. #39 at 19-20). Consequentially, Petitioner has shown neither a lack of performance or prejudice under *Strickland*, 466 U.S. at 687; *Johnson*, 256 F.3d at 1176.

**2.      Failure to Inform that a Guilty Plea Amounts to a Waiver of the Right to Challenge Indictment**

Petitioner next argues that his counsel provided ineffective assistance by failing to inform him that, by pleading guilty, Petitioner waived his right to challenge the Indictment. (Civ. Doc. #4 at 4). This argument is also without merit. By pleading guilty to the charges in the Indictment, it is as tautological as it is true that Petitioner admitted to the truth of the charges against him to which he pled guilty. Petitioner was made aware of this fact at the plea hearing. (Crim. Doc. #39 at 24). The court asked Petitioner whether he was pleading guilty because he was *in fact* guilty of all the charges pending against him. (*Id.*). Petitioner answered that he was. (*Id.*).

Moreover, even assuming that Petitioner's allegation is true and his attorney did not inform him that pleading guilty waives his right to challenge the Indictment, the court notes that Petitioner

13

has not alleged that he would have challenged the Indictment had his attorney informed him of this consequence.  (*See* Civ. Docs. 4, 8, & 19).  At the plea hearing, Petitioner testified that all of the charges against him are true.  (Crim. Doc. #39 at 24).  As Petitioner does not allege that he would have acted differently had his attorney advised him otherwise, he fails to demonstrate prejudice.  Therefore, and again, even assuming *arguendo* that the court finds that the failure to inform one's client that pleading guilty to all of the charges in the Indictment means surrendering the right to plead not guilty to any of the charges in the Indictment amounts to deficient performance (which it emphatically does not), Petitioner's ineffective assistance of counsel argument fails because he has not shown that he was prejudiced by such an alleged failure.

### 3.      Failure to Object to the PSR

Petitioner argues that his attorney provided him ineffective assistance because he failed to object to the pre-sentence report.  (Civ. Doc. #4 at 4).  Specifically, Petitioner alleges that his attorney erred by not challenging the factual predicates of the PSR and that his lawyer displayed incompetence when challenging a legal interpretation used in the PSR.

Regarding his counsel's alleged failure to challenge the factual predicate underlying the PSR, Petitioner does not specifically allege what, if any, factual predicates should (or could) have been challenged.  During the plea hearing, the court asked the Government to state in open court all the facts it intended to prove at trial.  (Crim. Doc. #39 at 25).  Those facts formed the basis of a factual basis for the charges against Falgout, and the United States Probation Office utilized those facts in preparing its pre-sentence report.  (Crim. Doc. #30).  At the plea hearing, Petitioner attested that all of those facts are true.  (*Id.* at 27).  As Petitioner admitted to the truth of all of the factual predicates of the PSR, it was not unreasonable that his attorney did not object to those facts.  His own client

(*i.e.*, Petitioner) had already sworn under oath that there was nothing objectionable with respect to the sentencing facts.

Petitioner also points to a decision his attorney made at the sentencing hearing that he believes demonstrates his attorney's incompetence.  (Civ. Doc. #4 at 4).  Petitioner's attorney submitted in his sentencing memorandum that the sentences for each offense "can be" imposed to run concurrently.  (Crim. Doc. #27 at 3).  During the sentencing hearing, he argued that the court should interpret the sentencing guidelines more favorably towards Petitioner and impose the sentences concurrently to comport with the Congressional intent behind the mandatory maximum sentences.  (Crim. Doc. #40 at 70-71).  Peitioner argues that the fact that his attorney lost this argument evinces his incompetence.  (Civ. Doc. #8 at 9).  This argument does not hold water.

The court gives great deference to an attorney's tactical choices in matters of legal strategy. *Johnson v. Alabama*, 256 F.3d at 1176.  Not every legal argument wins, but attorneys are nonetheless obligated to advocate zealously for their clients (so long as they do not advance frivolous arguments). If every lost argument were evidence of deficient performance, there would be no competent criminal attorneys at all.  Petitioner's attorney presented an arguable issue intelligently, and in the court's view made the best of a very difficult case.  And even to the extent his position was wrong, it was "wrong" in favor of his client.  Counsel's performance was professional and well-prepared.[4]

---

[4] Actually, Petitioner's counsel's position that a concurrent sentence was appropriate was not "wrong" as much as it was not accepted by the court.  Based on a total offense level of 43 and a criminal history category of I, Falgout's advisory guideline range was correctly found to be 11,520 months or 960 years.  As the court ruled in the underlying criminal case, a guideline sentence of 960 years is not only appropriate and justifiable in this situation, it is essential to insure that Falgout was properly punished, the public is adequately protected, and justice is effectively served.  The circumstances of this case, the characteristics of this defendant, and the need for general and specific deterrence support the imposition of a 960 year term of imprisonment.

Petitioner was sentenced pursuant to U.S. Guideline at §5G1.2(d).  The provisions of §5G1.2(c) did not apply in this case because the highest statutory maximum sentence was inadequate to punish Petitioner for the abject cruelty and "egregious and morally reprehensible" nature of his conduct. As detailed above, he preyed upon innocent, helpless children, subjecting them to unspeakable abuse. The nature of Falgout's conduct and his extreme indifference and cruelty

The court therefore does not find that Petitioner's attorney performed deficiently with regard to the sentencing procedure.  Furthermore, the court does not find any demonstration of prejudice as Petitioner himself admitted to all of the facts underlying the pre-sentence report.  Once all the facts were established, the court was left only to determine the sentence based on the "starting place" of the sentencing guidelines, and the requirements of 18 U.S.C. § 3553(a).

**4.      Failure to Make Evidence Available to Petitioner**

It is a basic truism that a defendant must be afforded the opportunity to present a defense. *United States v. Frazier*, 387 F. 3d 1244, 1271 (11th Cir. 2004).  One safeguard designed to provide a criminal defendant with the opportunity to prepare an adequate defense is Federal Rule of Criminal Procedure 16(a)(1), which provides that the Government is obligated, upon a defendant's request, to disclose and make available for inspection certain evidence the Government intents to use in its proceedings against that defendant.

Petitioner argues that his attorney performed deficiently because he "never produced" the evidence for Petitioner to see, nor did he "make this evidence available to [Petitioner]."  (Civ. Doc. #8 at 7).  This argument is way off target.  Federal Rule of Criminal Procedure 16(a)(1) does not require the Government to produce the evidence (much less produce copies of child pornography), but merely make it available for Petitioner to inspect.  The materials in question in this case - the incriminating photographs and video - were in fact made available for Petitioner's inspection.  (Civ. Doc. #18-1 at 2).  Petitioner's attorney viewed the materials and described the specific contents to

---

to his victims, which cannot be fully described without resort to actual viewing of the videotape and photographs that he produced, supported imposition of the advisory guideline sentence of 960 years in this case.  The children who were involved suffered, and undoubtedly will continue to suffer, both tremendous harm at the hands of Pierre Falgout. Section 561.2(d) states that if the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment.  That is exactly what the court did.

Petitioner, who never requested to view the video. (*Id.*). While Federal Rule of Criminal Procedure 16(a)(1) obligates the Government to make certain evidence available for inspection to a defendant who requests to see such evidence, the burden of requesting to see such evidence falls on the defendant. It is undisputed that Petitioner never requested to see the evidence in question.[5] (Civ. Doc. #18-1 at 2). Because Petitioner never requested to inspect the evidence, it is not unreasonable for his attorney to not request a viewing when his client never asked for one. Therefore, Petitioner's attorney did not perform deficiently.

Furthermore, and most importantly, the evidence reveals that Petitioner was not prejudiced in any way for not having inspected the evidence because he already knew what evidence was being used against him. He had received a copy of the Indictment. (Crim Doc. #39 at 10, 14-18). At the plea hearing, <u>before</u> he entered his plea, the Government described to Petitioner the evidence it intended to use against him at trial. (Crim. Doc. #39 at 25-27). He wrote to his attorney that he had already seen all of the pictures. (Civ. Doc. #10 at 18). Although he indicated in that letter that he had not seen the video, his other letters with his attorney indicate that he clearly knew what kinds of misconduct were depicted in the video. (Civ. Doc. #10 at 4, 7). After all, as Falgout himself admitted, he recorded them, which means that he "saw" the events in real time. Therefore, Petitioner cannot demonstrate prejudice because he did not inspect the evidence at issue. This ineffective assistance of counsel argument is therefore without merit.

---

[5] He did ask his attorney whether it would be possible to figure out which pictures would be seen by the court, but this question makes clear that he knew what kinds of images were depicted. (Civ. Doc. #10 at 7).

5.      **Failure to negotiate a more favorable plea bargain.**

Finally, Petitioner argues that his attorney performed deficiently by failing to negotiate a more favorable plea bargain. (Civ. Doc. #8 at 11).  He notes that in two recent cases, *Missouri v. Frye*, 132 S. Ct. 1399 (2012), and *Laffler v. Cooper*, 132 S. Ct. 1376 (2012), ineffective assistance of counsel was found in connection with the plea bargaining process.  In *Frye*, the Supreme Court found that an attorney provided deficient performance when he failed to communicate the existence of a plea offer extended by the Government to his client.  *Frye*, 132 S. Ct. at 1409.  In *Laffler*, the Court considered a case in which all parties conceded that the attorney had performed deficiently by advising the defendant to reject a favorable plea offer.  *Laffler*, 132 S. Ct. at 1391.  The court has carefully considered these cases and finds their application inapposite in the instant case.  Both *Frye* and *Laffler* concern the duties of an attorney with regard to a plea offer that had been extended by the Government.  Here, as Petitioner acknowledged at the plea hearing, no such plea offer was ever extended by the Government:

> The Court:      And do you understand that there's no deal that you
>                 have with the government or anyone else, including
>                 me, about what the sentence would be in this case?
>
> Petitioner:     Yes, sir.
>
> The Court:      You are willing to take your chances at sentencing, is
>                 that what you are telling me?
>
> Petitioner:     Yes, sir.

(Crim. Doc. #39 at 23).   Therefore, Petitioner's attorney cannot be said to have responded deficiently to a plea offer that did not exist.

18

Moreover, Petitioner's attorney did not perform deficiently because his decision not to pursue a plea agreement with the Government was strategic.  After his attorney explained to him that no plea agreement would be entered into, Petitioner indicated that he wanted to preserve all of his appeal rights.  (Civ. Doc. #18-1 at 2).  This would not have been possible had Petitioner agreed to a plea agreement with the United States as the Government, consistent with its plea practice in this district, would have insisted on at least a substantial waiver of appeal rights.  (*Id.*).  Therefore, Petitioner's attorney declined to pursue a formal written plea agreement with the Government, though he was able to get the Government to agree to dismiss several counts in the Indictment.  (*Id.*). Because his decision was motivated by strategic considerations pursued in the interest of his client – and, to be sure, with his own client's input – Petitioner's attorney cannot be found to have rendered deficient performance.

## V.  CONCLUSION

After carefully examining each of Petitioner's substantive and ineffective assistance of counsel claims, the court concludes that Petitioner has not shown cause to merit habeas relief.  For the reasons already mentioned, Petitioner's substantive arguments are procedurally defaulted and, even if they were not, also miss the mark for other reasons.  Petitioner's arguments asserting ineffective assistance of counsel are similarly without merit.  Therefore, for all the reasons discussed in this memorandum opinion, Petitioner's § 2255 Motion is due to be denied.  A separate order will be entered.

**DONE** and **ORDERED** this _____12th_____ day of July, 2013.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE